I think we can skim this away. You can proceed, counsel. You can proceed. You're reserving three, correct? Yes, your honor. I'll try to let you know. Okay. Thank you. May it please the court. The district court prematurely cut off appellant XY's claim in two significant respects. First the district court held- As an initial matter, which claims of the 559 are you asserting here in your 101? It is claim one is the independent claim. And then there are a couple of dependent claims that are set forth in the brief that have further mathematical operations, involve scaling, zooming, let's see, those are claims. Claim one is the independent claim. And then the independent claims are, do we have the number of those? Yeah, I'll just look at the claims. Pardon? Two through 23. Okay. Are they dependent claims? In the appendix, in the opinion, in 11 and 12, the district court says that our precedent is inconsistent when it comes to Gillick v. Nike and whether the claim preclusion doctrine requires plaintiffs to amend their pleadings when it comes to new rights acquired. The Gillick quote is, the race judicata doctrine does not apply to new rights acquired during the action which might have been, but were not litigated. What's your response to that position and how relevant is it to your case? Sure, your honor. I don't think it's critical to our case because Simple Air, I think, reconciles the body of race judicata law that was out there. And Simple Air was decided after the district court. We're not faulting the district court, but Simple Air is the law now. And what Simple Air seems to do, it says, look, what Nike said when it said that was not laying down a categorical rule. You could imagine a circumstance where you had an after-issued claim and it did in fact trigger race judicata, but it would have to be essentially the same patent claim scope. And it says outside of the distinct reexamination context, you have to do a claim by claim analysis to determine whether it's essentially the same, whether it's issued after or before. So Simple Air, I think, lends a lot of clarity here. And if the district court had the advantage of Simple Air, I think this case would have proceeded very differently. And I think that's the key point. And since we're on race judicata, I think that is straightforward in light of Simple Air, so maybe I can quickly address that before we move on to the 101. Simple Air is unequivocal, and it says it, page 1167 of that opinion. Race judicata applies, quote, only if the scope of the asserted claims in the two suits is essentially the same. And then it says that requires, at least outside the reexamination context, which is not applicable here, comparing the patent claims. Yet, just like the district court in Simple Air, the district court here failed to conduct that claim by claim analysis for the three patent counts at issue on race judicata. And in fact, the facts in Simple Air are sort of much worse for the party that was trying to avoid race judicata. There you had exactly the same accused products. You had a common specification. You had a terminal disclaimer to the same patent. Findings that there was strategic conduct by the plaintiffs, which isn't here. And all of that, still, this court said, no, all of that is not enough to get to race judicata. You have to look at the claims. And therefore, it vacated the district court and sent it back to do a claim by claim analysis. So here, at the very minimum, it's a vacater and remand to do that sort of claim by claim analysis. But we think that, in fact, you can go a step further, because although the district court didn't do that analysis, the briefs here fully do engage in that analysis, claim by claim analysis. And in our view, it's pretty plain from the face of the patents that they're not materially the same claims. If you take, for example, the 422 patent, there's three of them. The 422 adds a superovulation step that everyone agrees is simply not present in the patents that were at issue in the prior 2012 suit. That was a continuation in part. And the reason it was in part is because it added three paragraphs to the specification that specifically provided the support for the superovulation step. And then the corresponding claim in the 422 patent added the superovulation step. So it's clearly not the same scope as the 2012 patent. With respect to the 116 patent, the pulse laser patent, different inventors, different subject matter, it was the change from using a continuous laser, which was present in the 2012 patents, versus a pulse laser. And not just a pulse laser, but, in fact, claim one, which is the claim that survives and that's at issue here, that talks about multiply hitting a sorted particle, a particle that's trying to be sorted, multiply hitting it repeatedly. And that is an innovation that wasn't present in the 2012 patents. And then the last one is the 769 patent. That is also undisputedly broader in scope than the ones that were issued in the 2012 case because it drops two of the elements, the freezing and collection steps. So it's your view we should hold a trial this morning on those issues? Your Honor, I think those can be decided by this court, even though the district court didn't reach it because I think, based on the briefing here, it's clear those are different in scope. But if there's any doubt about that, at a minimum, you could remand. That's not what happened. In Simple Air, there was a remand, right? Yes. In Simple Air, they did. They simply just vacated and remanded. And they said there might have to be a claim construction, right? Yes. They said there might have to be claim construction on the facts of that case. So certainly, that's what they did in Simple Air. And the court, obviously, can follow that path as well. So if I should move on to the Section 101 argument, we think that the facts here are about as close as you're going to get to the Deere case. Both inventions, the Supreme Court's decision in Deere, both involve improvements to otherwise known industrial processes through the specific application of mathematical algorithms. And let me break down the ways in which they're similar. So first, as to the improvement step. In Deere, you had an inventive step that improved the industrial process of curing rubber, right? Whereas here, you have an improvement that improves the sorting method. You get a greater purity in the sort. So you have improvements in both. The second one applied to otherwise known industrial processes. In Deere, it was applying it, obviously, to the industrial process of curing rubber, which had been around a long time. Here, it's applying it to the known industrial process of sorting particles through the use of flow cytometry. What about the difference where Deere, one of the emphases there, was continuing to run that algorithm and running that algorithm repeatedly and then setting off the alarm, I think, to end the process of molding when the algorithm reached a certain result? You don't have that here, necessarily. You do have this algorithm continuing to run while the particles are going through the flow cytometer. Yes, I think it's the equivalent. It's a different technology, obviously. But it's basically the same thing. In Deere, they were harnessing the Arrhenius equation to help them determine what is the right time, as you said, to cut off the curing process. Here, they're harnessing a rotational alteration algorithm, which allows the flow cytometer to get a greater clarity in the separation of data, so it doesn't discard particles that it wasn't doing. And it's doing it now in real time. So that data is continuously being processed, sent to the flow cytometer, so that the flow cytometer can better detect, oh, this is an X chromosome, this is a Y chromosome, and therefore gain a greater purity than was ever present in the existing art. And that's set forth in the specification itself, that it, in fact, is an improvement. So just like in Deere, where using the Arrhenius equation in that continuous manner improved the—you got better cured rubber, here you have better sorted particles. And so it's about as—usually we end up looking to the federal circuit cases to find the best analog. But here, in fact, I think it's the Supreme Court case that provides the best factual analog. And so— Can I ask you another question about this 101 issue? The court held that the claims are directed to the mathematical equation that permits rotating multidimensional data. Right. What's your view of what the claims are directed to? We think, just like in Deere, the claims are directed to an improved industrial process for sorting particles. That was the objective by doing it. Just like in Deere, they did use the Arrhenius equation to get better cured rubber. And here, we're using the rotational algorithm. Would you even go narrower than that and say it's an improved cytometer? Yes. Yes, exactly, Your Honor, just as we said in our brief. It would be—it's a cytometer configured in a specific way to sort particles. And it's improving the outcomes reached in that by using this rotational algorithm, which enhances data separation, which is then fed into the flow cytometer, which then does it in a very specific way. So this is very different, for example, than trying to—the inventors here weren't trying to preempt in any way use of rotational algorithms. Rotational algorithms obviously had been around a long time, but this is the first time anyone had thought to use it in conjunction with this industrial process. The inventors here do not care about rotational algorithm and are not trying to capture its use in any other of the million ways in which it's used. This is not tacking on a post-solution process, as in some other cases, in order to get to that natural law. Here, they really care about the industrial process. That's what the patent is all about. That's what it's directed to, an improved flow cytometry method of sorting particles. And one step in that, just like in DEER, one step was using the Arrhenius equation to get there. Here, using the rotational alteration algorithm is one step to help you get there. Do you have any comment on Thales' Vision X case? Sure, Your Honor. We think Thales supports that. Thales, in fact, I think characterized itself as a step one case. We think, Your Honor, this is also a step one case. That's the easiest way to do it. Just as Judge Stoll asked, what is this directed to? That's the step one question. I think the district court kind of took an overly abstract view of this and said, well, it uses a mathematical equation. Therefore, it's directed to the mathematical equation. No, it's directed to the specific process. And so we think, like in Thales, and Thales recognized that DEER, although it predated the Alice step one. So, you know, keep going. Oh, OK. So just to finish that thought, although DEER predated the Alice step one, step two inquiry, it drew on DEER and said, well, it's not limited to step one. It certainly speaks a lot towards step one. And that's what we think is going on here. I'm happy to talk about why this is not even a closed case under step two. But maybe I'll save that for rebuttal if that comes up. Thank you, Your Honor. Good morning, Your Honors. And may it please the court, I think I'm just going to jump right into it. Counsel on the other side started with the raised judicata issue. So I will as well. You need to speak up a little bit, please. Sure, sure. Your Honors asked first about the Gillig case. I think as XY's counsel here has conceded, they didn't appeal that issue. That's not before the court. Counsel for XY talked about the simple error decision. Simple error does not, contrary to what XY's counsel says it does, it does not actually require a claim by claim comparison. It does not say that. Simple error actually says that its holding is expressly limited to one issue. And that was whether it was reversible error for the district court in that case to hold that the mere filing of a terminal disclaimer was dispositive on the issue of raised judicata. And it found that, yes, simply filing a terminal disclaimer and holding that that alone warranted a finding of patentable indistinctness, that was reversible error. But simple error does not say that a claim by claim comparison or a detailed comparison is required in every case. In fact, it says the opposite. It actually refers back to the Sinju case.  That the district court never compared the claims of the patents that were dismissed as precluded with the claims of the 2012 lawsuit. In the appendix at 7, the district court says that it needed to address whether, one, whether XY was in a position to assert the patents at the time of the prior lawsuit, and two, whether the claims asserted were materially the same. It doesn't look like the district court addressed the materiality. Isn't that reversible error? Well, I think what the district court held is it actually does say that if it finds that the claims in the second case are the same or substantially the same as the claims in the first case, then it can find that they're patently indistinct or materially indistinct. It does not do a detailed claim by claim comparison. And I would say that with respect to the 769 patent, that is not required. And I think XY's counsel here today essentially conceded that rather than remand this case back to the district court to have it do a claim by claim comparison, this court's perfectly competent to do that analysis itself. With respect to the 769 patent, I would invite this court to do that analysis because there is no difference between the 769 patent claims and the two earlier asserted reversed sort patent claims, save for one distinction, which is the earlier patent say collect and freeze the sperm cells, whereas the 769 patent says thaw cells that have already been frozen. Is there a material distinction between collecting, freezing, and thawing versus thawing previously frozen cells? No. I think that's readily apparent on the face of the claims. And Senju says explicitly that if it's readily apparent that there's no material difference between the claims of the first suit and the claims of the second suit, there's no need for a detailed comparison. So certainly with respect to that patent, I would suggest that there's no need to remand that, that the court was within its rights to hold that there was no difference. And as Judge Stahl stated earlier in the day, this court sits to review judgments, not opinions. So whether the opinion was perfect is not the issue. Is it your view that this court can do that side by side race judicata analysis and not have to go back to the trial court? So certainly this court is competent to perform that analysis. If any court in this country is, it's this court. And with respect to the 769 patent, as I mentioned, With the others, I mean, I would acknowledge- We're not going to cherry pick it and do the one you want. If we do any of them, we'd have to do all of them. Well, I don't know that there's a rule that all of them would have to be remanded. I think it would still save judicial resources if this court said, we're perfectly competent to affirm the district court with respect to the 769 patent. If the court were inclined to remand the other two patents back down in light of simple error and say, it would be beneficial to us if the court had conducted a claim by claim comparison. So we're going to remand those patents back down to the district court to do that analysis. That certainly wouldn't be unreasonable. I do think it would be a waste of judicial resources to do that with respect to the 769 patent when it is so readily apparent from the face of the claims that it claims pretty much the exact same subject matter. I understand your point. Okay. The last point that I would make on the res judicata and specifically with respect to the distinction that XY's counsel tries to draw out between the 769 patent and the earlier patents. They say the collecting and freezing steps are materially distinct because in theory, a competitor could structure its business operations so as to avoid infringing the first set of patents by not collecting and freezing, but not avoid infringing the 769 patent. As a practical matter, that has been tested. Transova doesn't collect or freeze sperm cells and we were found to have infringed those claims. So just as a practical matter, that argument just doesn't work. But more fundamentally, that argument ignores that the important issue here, which is the scope of the claims. It's not the number of entities that might infringe a particular claim. It is the scope of that claim itself. And XY's argument would be akin to saying that there is a material distinction between, for example, a claim that says operate machine X and a claim that says turn on and operate machine X. Is there a material distinction between those two claims? No. Could they, in theory, be asserted against different infringing entities? In theory, they could. But there's no material distinction between those claims, just as there is no material distinction between thawing a frozen cell sample and collecting, freezing, and thawing that same sample. With that, I'll turn to the 101 issue. And I think it's probably more efficient if I just go through some of the points that I heard counsel make and address those. Can I ask you just my same initial question that I asked your opposing counsel, which is that the court held that the claims are directed to the mathematical equation that permits rotating multidimensional data. Do you agree with that? Yes. I think that there are a lot of conventional elements. I mean, this claim is chocolate. We're supposed to look and decide what's conventional and not conventional when we decide what a claim is directed to? No, but I'm simply pointing out that even XY doesn't dispute that everything in this claim was known in the prior, with one exception, according to them, and that is the use of rotation math to sort particles in real time. Again, though, you're saying that this court, when it looks at what a claim is directed to, which is really more akin to a claim construction exercise. What is the claim directed to? We're supposed to consider prior art or what is whether individual steps are known or not. I mean, we're supposed to look at whether it's directed to an abstract idea, whether it's directed to a natural law, whether it's directed to a mathematical equation, which might be an abstract idea. Of course, there's cases that say you can use a mathematical equation in a actual application just because you have math. Like, for example, in Thales, just because you have math doesn't mean that it's directed to an abstract idea. So I'm questioning your promise of, I'm supposed to just ignore the other elements of the claim because they're admittedly known as individual elements. I'm not asking you to ignore them, and I'm not asking you to make any independent determination as to which ones are in the prior. It's uncontested. It is uncontested that everything in the claim is in the prior. Your friend said that use of the pulse laser repeatedly was not in the prior. Is that correct or incorrect? That's with respect to the res judicata issue and one of the patents. It's not applicable to the 559 patent. All right. So you're asking, what is that invention directed to? It is directed to using math to sort particles in real time. That's what it's directed to. And I heard- So it's not directed to the mathematical equation alone? Well, it's directed to that mathematical equation- Using math to, in order to sort particles in a flow cytometer. Sure, yes. Counsel likened the claim to the one in Deere. There's a very big difference between this claim and the claim at issue in Deere. That claim actually resulted in a novel product, and the court took pains to make that point. And it said it resulted in a synthetic, cured, molded product, a result heretofore unknown in the art. That is not what we have here. There is no new product. The claim ends with the sorting of particles, which is the exact same result as the prior art method. How do you square what you're saying with Deere's express statement that you're not going to look at prior art and consider 102 and 103 in your analysis of 101? I mean, it does expressly say that. Sure, and there are several cases, I think, that maybe say the opposite. I mean, you could contrast Deere- Just focusing on Deere. Sure. So I don't think you have to look at the prior art. I mean, I think you can just look at the mathematical formula in this context, in the context of this claim. Their entire argument is built, and counsel said it repeatedly today, their entire argument is premised on that mathematical formula leading to an improved result, an improved result. And if they had support for that, if they actually showed an improvement in the specification, that might be a good argument. It would be a better argument, though, if they actually claimed it. They don't claim that. The claims don't recite a better result. The claims don't recite increased accuracy or, you know- Does the specification say that it's improved? No, it does not. It does not. What the specification says at every turn is that the use of rotation math may lead to better results. It's not even definitive as to whether it does lead to better results. It may lead to better results. Why does it say it may? Why is it permissive? Because they had no results to back that up. They had zero results. The only data, the only rotated data disclosed in the patent is in figures five and six. And if you look at the inventor's description of those figures, it says this is rotated data. They conspicuously do not characterize that data. They don't say it shows cleaner separation of the particle data. It shows increased purity of the particle populations. They don't characterize it at all because it actually, in fact, doesn't show any of those things. If you actually look at the particle data, it's not that well separated. It's not even as well separated as the prior art data that's disclosed in Evans figure 10. So that may very well be why they don't recite it in the claims and why they don't even definitively say anywhere in the specification. So in step one, you would have me look at prior art to see whether a patent donor's suggestion that something is actually an improvement or not is actually an improvement. I don't know that that is appropriate in step one. I think in step one, we're just assessing whether the invention as a whole is directed to an abstract concept. I think the answer here is yes, for the reasons I've explained. I think once you move into step two and you're looking at whether or not the invention as a whole is directed to a quote unquote inventive concept, then I think it's appropriate at that point to look at what's come before, to look at what is conventional. And again, and this is important, they've conceded every step of the claim is known in the prior art. They've only... This decision was made, if I understand it correctly, on a 12C motion, judgment on the pleading. So there was no evidentiary basis for looking at the prior art, was there? Well, I mean, certainly... Yes or no? No. Thank you. There was an evidentiary basis to look at the patent specification at issue, the 559 patent specification. The written description. Yes, which discloses Evans specifically and says... Is it the right Evans? Because I'm going to think if you look at the patent number, you'll see it's not the Evans that you're relying on. The patent discloses a different patent. I believe it discloses the same specification, Your Honor. And it discloses, in particular, the 559 patent specifically discloses the use of compensation algorithms, quote, as someone skilled in the art would appreciate. All right, that's a quote from the patent. It's talking about the compensation algorithms specifically disclosed in Evans. That also disclosed math to sort particles in the exact same way that this claim is to math to sort particles. It's just a slightly different math. And the question is, do you want to reward XY for relying on a totally conventional, well-known mathematical algorithm and substituting that algorithm for the other conventional well-known algorithm, which was the compensation algorithm. And you want to now reward them with a patent on having done that. Maybe, maybe if they've claimed it, if they've recited it in the claims, right? Or if they've described it in the specification. It's not in the claim. As I said, it's also not in the specification. I just want to point something out, which is you're talking about rewarding them with a patent when somebody else has come up with something. I mean, that sounds more like 102, 103, doesn't it? Well, I mean, this isn't over. This is at the 12C stage, right? Right. Well, I think it's important maybe to look at the Berkheimer case, which I think is extremely instructive, right? There were two sets of claims. Do that in 10 seconds. There's claims one through three were struck down specifically because they did not recite the alleged improvement. Claims four through seven, there was determined to be a material issue of fact because the court found that they did recite the alleged improvement. And maybe, not definitively, but maybe that was sufficient to state an inventive concept. And so remanded back to the district court on those claims. But on claims one through three, it did not. It struck those down because that alleged improvement was nowhere in the claims. Same as here. I just want to point out one thing, which is that I'm not sure the specifications are the same. You can look at that, but I'm not sure they are. I don't think I agree with you. You can look at them. Okay. Thank you, Your Honor. Thank you, counsel. Shah, you have two and a half minutes. Sure, Your Honor. Thank you. Just a few quick points on each issue. On race judicata, just two points. Simple error does, in fact, say unequivocally, obviously, you're capable of reading the decision at 1168. Claim preclusion analysis requires comparing the patent claims. That's an exact quote. It then carves out the special reexamination context, which is not at issue here. Second, Judge Wallach, you're exactly right. The district court opinion has two parts to its opinion. The first is, could they have been brought? That's when they analyze the three patent claims that we're talking about in race judicata. It then has a second, essentially the same or materially different section. There, it analyzes only the 822 patent, which is not at issue on this appeal. None of the three patents here. So at a minimum, it's a vacated remand under simple error. On the section 101 argument, my friend on the other side talks about new product being the distinction between deer and this case. That's a distinction without a difference. In deer, you had better cured rubber as the new product. Here, you have better sorted product as the new product. In deer, the claim itself, deer reprints the claim. What about the fact that you said may happen rather than will happen? Does that matter? No, Your Honor. Certainly, it does not matter for step one as to whether it's directed to an industrial process that is sorting outcomes. All of their arguments, which was my second point, go to step two. Was there really an improvement, which is an odd question to be asking it on a 12C motion. We don't think you need to even get there because this is clearly a step one case and it can end right there. But if there was any doubt about that under step two, the specification, I'll read you the passages and there are a number of them. It does use the word may, but it clearly talks about the rotational algorithm leading to improved sort outcomes on column seven, line 17 through 20. One method of gaining spatially separated data may be to use compensation algorithms. That's the analog in the Evans patent that he's talking about, as those skilled in the art could appreciate. Rotation of the data, forward scatter versus side scatter, may be a more accurate mechanism to do this. And then there's several other passages in the specification that talk about unlike conventional methods, this one may lead to better sort outcomes. But again, Your Honor, those are all step two arguments in which you can have a battle of experts and all that, but we don't even get there in this case. And the last point I would make is the arguments that they're making as to whether this is a material advancement or not. Again, step two, obviousness and novelty, they're welcome to bring those arguments at a later stage in this case. Thank you, Your Honor. Thank you, counsel.